UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
KEVIN HOWARD                                       )
                                                   )
    **Plaintiff**                                    )
                                                   ) C.A. NO.
v.                                                 )
                                                   )
**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS**      )
**LOCAL 2718;**                                    )
                                                   )
And                                                )
                                                   )
The **TOWN OF NAHANT, MASSACHUSETTS**              )
                                                   )
And                                                )
                                                   )
**EDWARD HYDE**                                    )
                                                   )
And                                                )
                                                   )
**JOSHUA MAHONEY**                                 )
                                                   )
And                                                )
                                                   )
**DEAN J. PALOMBO**                                )
                                                   )
And                                                )
                                                   )
**DAVID DOYLE**                                    )
                                                   )
And                                                )
                                                   )
**FRANK PAPPALARDO, III**                          )
                                                   )
    **Defendants**                                   )
_____)

## COMPLAINT
(With Jury Demand Endorsed Hereon)

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

NOW comes Plaintiff, **KEVIN HOWARD**, by and through undersigned counsel, and for his complaint against Defendants states and avers as follows:

## THE PARTIES

1. The Plaintiff, Kevin Howard (hereinafter "Howard"), is an individual who resides in Nahant, Essex County, Massachusetts. Howard is currently and has at all times relevant hereto been employed as a firefighter for the Town of Nahant, Massachusetts (hereinafter "Nahant"). Additionally, Howard is presently and has been at all times relevant to the subject matter of this Complaint a member of the International Association of Firefighters Local 2718.

2. The Defendant International Association of Firefighters Local 2718 (hereinafter the "Union"), is and was at all times relevant to the subject matter of this Complaint a labor organization within the meaning of § 301 of the Labor Management Relations Act. 29 U.S.C. § 185, with offices located at 67 Flash Road, Nahant, Massachusetts 01908.

3. The Defendant the Town of Nahant (hereinafter "Nahant"), is a municipality and political subdivision of the Commonwealth of Massachusetts, with offices located at 334 Nahant Road, Nahant, Massachusetts 01908.

4. The Defendant Edward Hyde (hereinafter "Hyde"), is an individual who resides in Nahant, Essex County, Massachusetts. Hyde is currently and has at all times relevant hereto been employed as firefighter for Nahant and presently serves as the acting chief of the Nahant Fire Department (hereinafter the "NFD").  Hyde likewise is and was at all relevant times a member of the Union.  Hyde is sued in his individual and official capacity.

5. The Defendant Joshua Mahoney (hereinafter "Mahoney"), is an individual who resides in Nahant, Essex County, Massachusetts. Mahoney is currently and has at all times relevant hereto been employed as a firefighter for Nahant and presently serves as the president of the Union.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

Mahoney is and was at all relevant times a member of the Union.  Mahoney is sued in his individual and official capacity.

6.      The Defendant David Doyle (hereinafter "Doyle"), is an individual who resides in Nahant, Essex County, Massachusetts. Doyle is currently and has at all times relevant hereto been employed as a firefighter for Nahant.  Doyle is and was at all relevant times a member of the Union.  Doyle is sued in his individual and official capacity.

7.      The Defendant Dean J. Palombo (hereinafter "Palombo"), is an individual who resides in Nahant, Essex County, Massachusetts.  Palombo is currently and has at all times relevant hereto been employed as a lieutenant for the NFD.  Palombo is and was at all relevant times a member of the Union.  Palombo is sued in his individual and official capacity.

8.      The Defendant Frank Pappalardo III (hereinafter "Pappalardo"), is an individual who resides in Nahant, Essex County, Massachusetts.  Pappalardo is currently and has at all times relevant hereto been employed as a firefighter for Nahant and served as the Union's treasurer.  Pappalardo is and was at all relevant times a member of the Union.  Pappalardo is sued in his individual and official capacity.

## JURISDICTION AND VENUE

9.      This arises under 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. § 1331.

10.     Plaintiffs invoke this Court's supplemental jurisdiction with respect to claims brought under the common law and the statutes of the Commonwealth of Massachusetts.

11.      The unlawful practices of the Defendants alleged in this complaint were and are being committed in Nahant and Lynn, Massachusetts which are located in the jurisdiction of the United

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

States District Court for the District of Massachusetts**.** Venue lies with this Court pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

12.     Howard has served as a member of the NFD from 1999 until the time of his termination in March, 2011.  Throughout the course of his career he was consistently commended for his services to Nahant and its citizens.

13.     While a member of the NFD, Howard also served as the president of the Union from 1999 until late February, 2010.

14.     In about late 2009, Mark Cullinan (hereinafter "Cullinan") Nahant's former town administrator, looked to locate a replacement for NFD chief Robert Ward (hereinafter 'Ward") who planned to retire on March 1, 2010.  Cullinan first approached Hyde who at the time was a NFD lieutenant and 24 year member of the NFD.  Cullinan was, however, unable to come to a mutually acceptable financial arrangement with Hyde and began to look for other candidates.

15.     In or about early 2010, Howard was approached by Cullinan to serve as the NFD's acting chief as he had been unable to come to terms with Hyde.  Initially, Howard was reluctant to do so.  At this time, Howard expressed to Cullinan his concerns as a life –long resident of Nahant that the NFD was in "sad shape" and the Nahant firefighters were not providing appropriate services to Nahant.  Specifically he indicated that he did not feel that the firefighters were properly trained or properly supervised.  As a result of the lack of appropriate training he felt that the citizens of Nahant, including but not limited to members of his own family, were placed at risk.  Further he indicated that as the firefighters had not been properly supervised by their chief for many years they had grown lazy and accustom to doing as they pleased while on duty.  As a

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

result, as Howard explained, the firefighters more often than not attended to their own business and personal affairs while on duty and in uniform instead of performing their job related duties. Further Howard explained that these problems within the fire department had caused him issues with depression and feelings of helplessness. Howard made it clear to Cullinan that as a private citizen with deep ties to Nahant he could not accept a position as acting chief unless he was permitted to make the necessary reforms.

16. After receiving assurances that he had Cullinan's full support to make what reforms he felt were reasonably appropriate, Howard agreed to accept position of acting chief.

17. When news of Howard's aforesaid appointment reached Hyde, Hyde became enraged. In fact Hyde was so incensed that he publically blasted Cullinan and the Town of Nahant in the Lynn Item newspaper [1] (hereinafter the "Item") claiming collusion between the Town of Nahant and the Union. As Hyde explained to reporter Debra Glidden, Howard's appointment was "a bag job from the beginning". As he further alleged he "was interested in the job. But Mark (Cullinan) low-balled (him). As he indicated "[y]ou don't have to be a rocket scientist to read between the lines and see that a deal was cut between the town administrator (Cullinan) and the union president (Howard)." Hyde concluded this interview by pronouncing that Howard's appointment, which he felt was the product of unlawful dealings between Cullinan and Howard, marked a "sad day for the town of Nahant and the Nahant Fire Department".

18. In addition to Hyde's outrage over his own non-selection, Hyde was upset Nahant did not offer the position as acting chief to Palumbo who was likewise a lieutenant at the time and had been with the NFD for 20 years. Although Palumbo, did not denounce Cullinan in as strong of terms as Hyde, Palumbo did indicate to the Item that while he "would not have gone up against

---

[1] This article (titled "Nahant appoints acting chief, lieutenant unhappy") appeared in the February 26, 2010 addition of the Item.

5

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

Hyde", he expected that in the event that Hyde did not receive the job that he would be "next in line receive an offer".

19. As part of his aforementioned interview with the Item, Hyde claimed that Nahant had violated his First Amendment rights by threatening him with "disciplinary action". As Hyde explained to the Item he "was threatened with disciplinary action if (he) spoke to the media regarding (Howard's) appointment". He claimed that he was surprised by this as he never knew exercising his "First Amendment rights were grounds" for such action.

20. Both in the days before and after their aforesaid interviews with the Item, Hyde expressed his displeasure over Howard's appointment to Howard. Specifically, Hyde indicated to Howard that he had "screwed (him)" and that Howard would see what it was like to have Hyde as an "enemy". Hyde went on to accuse Howard of indicating to Cullinan that Hyde was not a properly certified EMT. Hyde further indicated to Howard that he would not "lift a finger" to help Howard and that Howard's days as acting chief were "numbered".

21. Palumbo also expressed his concerns to Howard over Hyde's and Palumbo's non-selection. Palumbo indicated to Howard that Howard should not have accepted the position and should have instead insisted that he be offered the position in the event that Nahant could not come to terms with Hyde. Palumbo indicated that he felt that Howard, who he considered his friend, had betrayed that friendship by accepting the appointment. Palumbo also indicated that Doyle and Mahoney were upset over his appointment and had told both he and Hyde that they would help Hyde have Howard removed if that is what Hyde wanted done.

22. Believing that he had Cullinan's full support, after becoming acting chief, Howard began to attempt to correct some of the abuses that he had witnessed within the fire department, including but not limited to dereliction of duty, misuse of NFD vehicles and improperly obtained

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

EMT certifications. Of first and paramount importance, Howard attempted to address Nahant's EMT issues. Certain members of the Union, including Mahoney, Doyle, Pappalardo, Hyde , and Palombo, had for several years been purchasing their EMT certifications from a certain Mary Mansfield of Lynn, Massachusetts. Specifically, these individuals had paid Ms. Mansfield to certify that they had taken EMT classes and training that they did not. Howard suggested a plan whereby the Union membership would take the necessary courses to become current on their EMT certifications. This suggestion was, however, rejected by the Union membership who felt that it would draw undue attention to their previous actions and could lead to discipline and/or termination. Mahoney and Doyle were particularly vocal in their opposition indicating that if Howard persisted in his pursuit of the matter that they would see to it that he was removed as chief.

23.     As Howard was receiving very little cooperation from firefighters in connection with his proposed reforms, Howard set a meeting with Cullinan to discuss the issues. Prior to this meeting, Howard prepared a written agenda detailing the aforementioned issues by way of bullet points. At the meeting Howard presented this agenda to Cullinan and discussed each of the issues listed above. In response to Howard's concerns, Cullinan indicated that he felt that Howard was attempting to move too "quickly" and that making meaningful changes would take "time". Cullinan did, however, renew his promise to fully support Howard in his attempts to address the issues that he had identified, but instructed Howard not to mention the matters, especially not the EMT issue, until Cullinan could come up with a plan that was "best" for Nahant and its citizens.

24.     While Howard was attempting to effectuate the aforementioned reforms, Hyde, Mahoney, Doyle, Pappalardo and Palumbo, were actively conspiring to have Howard removed

7

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

as acting chief. In furtherance of their plan, said Defendants conducted an "audit" of the financial records of the Union and claimed to Howard and his family members that they had found evidence of Howard's "misuse" of the Unions funds. Specifically, Mahoney claimed that Howard had used Union funds for his own personal purposes. As alleged proof of this allegation, Mahoney stated that he found ATM cash withdrawals that the Union did not authorize.

25. When confronted by these allegations Howard indicated to the Union, the Union was well aware that Howard bought items for the firehouse on nearly a daily basis. In response, although Mahoney acknowledged that he did so, Mahoney stated that Howard must produce a receipt for each purchase or repay the money. Howard at that juncture offered to pay to the Union whatever the Union claimed had been misused in order to resolve the situation. Mahoney indicated, however, that as they could no longer "trust" Howard with their "lives" that he should immediately resign as acting chief and as a NFD firefighter.

26. Following his conference with the Union, Howard met with Cullinan to discuss the Union's actions. Cullinan told Howard that he was not surprised as he had predicted a back lash for Howard's appointment and attempted reforms. Cullinan, stated that he would talk with the Union to determine how the problem might be addressed. At this point, Howard informed Cullinan that as a result of the problems that he was experiencing with the Union, he was suffering from depression and sleeplessness. He likewise indicated that these issues had aggravated his PTSD, which he incurred as a result of certain traumatic events at work, and increased the frequency of his panic attacks and feelings of helplessness. In response to these concerns, Cullinan indicated that he would see what could be done by Nahant to be of assistance.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

27.     On or about April 25, 2010, the Union placed calls to Debra Glidden of the Item and indicated that Howard had been accused of "improprieties" concerning the use of Union funds[2]. Following this report, Glidden questioned Cullinan who publically disclosed that Howard was on "medical leave but has not resigned" as acting chief. Cullinan further claimed that "[t]here were no allegations of theft from the town" and refused to make any comment concerning the allegations "beyond that". Cullinan did indicate that in the event that he has prepared to appoint Hyde as the new acting chief by the end of the week should Howard resign.

28.     Following the aforesaid article, Howard had further discussions with Cullinan concerning his continued role with the NFD. During the course of these discussions, Howard stated that it appeared to Howard that Cullinan had already decided to appoint Hyde as acting chief. Howard likewise indicated to Cullinan that he was gravely disappointed that Cullinan had not publically supported him. Cullinan stated that it was not possible to support him publically and that Nahant simply could not have an acting chief that could not get along with the Union. Cullinan went on to say that he was convinced that in the event that Howard did not resign that the Union would keep embarrassing Howard and Nahant in the press and would likely file a criminal complaint. Cullinan suggested that it would be best for Howard to go on medical leave. Cullinan indicated that once everything "blew over" he would see to it that Howard would remain as a firefighter. Cullinan, however, cautioned Howard that there was nothing further Nahant could do for him in the event that he made any public statement to the press or anyone else for that matter concerning his proposed reforms as it was just too much for Nahant to handle all at once.

---

[2] These allegations were reported in the Lynn Item in an article entitled "Nahant could have new acting chief by week's end" on April 26, 2010. These same allegations were also reiterated nearly verbatim in an article entitled "Nahant fire chief lands in hot water" which the Item ran the next day on April 27, 2010.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

29. After considering Cullinan's comments, and after receiving Cullinan's assurances that Cullinan would deal with issues, including but not limited to the EMT issue, at the "appropriate time", Howard agreed to resign as acting chief and go on medical leave.

30. Seemingly not satisfied with Howard's resignation as acting chief and in order to apply additional pressure to Howard to resign as a NFD firefighter as well, the Union on or about April 30, 2010 and at the direction of Mahoney, Doyle, Pappalardo, Hyde, and Palumbo, falsely claimed to the Item that Howard had "embezzl(ed) approximately $20,000.00 in union funds while he was union president".

31. Following the April 30, 2010 article, Cullinan informed Howard that the Union would not accept Howard's return as a firefighter and would file criminal charges against Howard unless he resigned and stopped accusing them of EMT violations. Cullinan suggested that it would be best if Howard resigned. If he did, Cullinan told Howard that we would get Howard on the lay-off list and insure that the NFD provide him with an outstanding recommendation so that he could transfer to another fire department. Howard stated at this point that he only resigned as acting chief on the basis of Cullinan's assurances that he would be returned as a firefighter. Cullinan informed Howard that it may no longer be possible to do so given the "bad press" that Howard had received. Cullinan did, however, suggest that maybe it might be possible for Howard to meet with the Union directly so that they might work out their differences. Howard stated that he felt that Cullinan had broken his promise to him and betrayed him. Howard likewise indicated that he felt that Cullinan was simply attempting to get rid of him so that Cullinan did not have to deal with the EMT issues or stand up to the Union. At this juncture, Cullinan became angry with Howard and stated that Howard had no idea what sometime needs

10

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

to be done to run a town and that everyone would lose their jobs and Howard would never work again as a firefighter "anywhere" in the event that the EMT scandal was revealed.

32. Feeling that Cullinan would no longer help him, Howard and his family[3] did have direct discussions with the Union concerning Howard's status. During the course of these meetings, Mahoney and Doyle took the lead roles for the Union and insisted that Howard resign or that criminal charges would be filed. Doyle likewise told Howard that that he could never prove the EMT charges as the NFD firefighters all had their cards and that all of the Union would tell the "same story". Nevertheless Doyle informed Howard that if he raised the EMT issue at some point after his resignation the Union always had the option to file a criminal complaint against Howard. Howard stated that he would not resign and that the Union could "do whatever it wanted to do".

33. Apparently becoming frustrated that Howard would not resign, by late June, 2010 Mahoney began to attempt to harass and intimidate Howard. Specifically, on multiple occasions he would follow Howard through Nahant in his vehicle and give Howard the 'finger' and shout obscenities at Howard. On certain occasions, Mahoney would refer to Howard as a "f.cking rat", presumably on the basis of Howard's concerns regarding the EMT scandal and make shooting gestures with his finger. As Mahoney had a history of violent acts, Howard became increasingly fearful for the safety of himself and his wife and two sons.

34. In addition to verbally harassing and threatening Howard, Mahoney, on behalf of Union and with the approval and encouragement of Pappalardo, Doyle, Hyde and Palumbo, filed an application for complaint in the Lynn, Massachusetts District Court on July 6, 2010 alleging that

---

[3] The Union had discussions with Howard's father Eugene Howard and his brothers Justin and Christian Howard. For the purposes of this Complaint Eugene, Justin and Christian Howard are collectively referred to as the "Howard family".

11

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

Howard had stolen in excess of $7,500.00 from the Union during the period of July, 2007 until and including March, 2010.

35. Following the filing of the complaint, Cullinan indicated to Howard that he had received assurances from Mahoney that the criminal charge would be dropped by the Union in the event that Howard resigned his position as a Nahant firefighter and signed an agreement in which he promised to keep all information concerning the aforementioned EMT issues, the NFD, the NFD firefighters and the Union "confidential".  Cullinan explained to Howard and it was in Howard's best interest to accept these terms in order to protect his "pension".  As Cullinan indicated to Howard, it was best simply to walk away from his job and his proposed reforms so that he could protect his retirement.  In the event that Howard elected not to do so, Cullinan indicated that Nahant couldn't do anything else to help him.

36. In response to Cullinan's offer, Howard stated that he could not agree to withhold or "keep confidential" information concerning the EMT issues.  After Cullinan communicated this fact to Mahoney, Mahoney intensified his harassment of the Howard family in the form of stalking his wife and children, threats to kill Howard and repeated threatening gestures to Howard and his family.

37. In response to Howard's refusal to accept Cullinan's aforementioned conditions, on or about August 20, 2010 the Defendant issued a letter allegedly in compliance with Massachusetts General Law Chapter 31, Sections 41-45 suspending Howard without pay and setting a termination hearing for August 26, 2010.  Howard was thereafter terminated from his employment.

**FIRST CAUSE OF ACTION**
**(G.L. c. 149 § 185)**

**(Against Town of Nahant)**

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

38.     Howard restates the allegations contained in Paragraphs 1-37 as if specifically set forth herein.

39.     Nahant, by various actions of its employees and agents as specified herein, has taken retaliatory action against Howard because of Howard efforts and actions to disclose, and/or actual disclosure, to a supervisor or public body, the activities, policies and practices of NFD that Howard reasonably believed to be in violation of the law. See Massachusetts General Laws, Chapter 149, Sec. 185(b)(1).

40.     Nahant, by various actions of its employees and agents as specified herein, retaliated against Howard because Howard objected to, or refused to participate in, activities, polices and practices of the NFD that Howard reasonably believed to be in violation of the law. See Massachusetts General Laws, Chapter 149, Sec. 185(b) (3).

41.     As a direct and proximate result of the foregoing actions of Nahant, Howard has suffered anxiety and severe emotional distress, has suffered humiliation and embarrassment, has been slandered and libeled and suffered defamation of his character, has suffered and will continue to suffer lost wages and benefits, and has suffered other compensatory damages to be proven at trial.

**WHEREFORE,** the Plaintiff demands judgment against Nahant, pursuant to Count I of this complaint, together with statutory interest, costs of suit, and his reasonable attorneys fees.

### SECOND CAUSE OF ACTION
### 42 U.S.C. SECTION 1983

**(Against All Defendants)**

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

42. Howard restates the allegations contained in Paragraphs 1-41 as if specifically set forth herein.

43. Nahant, as well as the individual Defendants, in their official capacities, is/ are "persons" amenable to suit under 42 U.S.C. Sec. 1983.

44 Nahant, by various actions of their agents, servants and employees, as specified elsewhere herein, has violated Howard's rights under the First and Fourteenth Amendments to the United States Constitution.

45. Specifically, Nahant has retaliated against Howard for exercising his right to free speech under the First Amendment to the United States Constitution.

46. The individual Defendants are liable in their individual capacities for the wrongful conduct detailed elsewhere herein.

47. Nahant is liable for the wrongful conduct as detailed elsewhere herein, in that the injuries that Howard suffered were caused by the execution of a government policy, custom, official decision or alternatively, the wrongful conduct of its employees whose acts can fairly be said to represent the policy of the government entity.

48. As a direct and proximate result of the foregoing actions of the Defendants, Howard has suffered anxiety and severe emotional distress, has suffered humiliation and embarrassment, has been slandered and libeled and suffered defamation of his character, has suffered and will continue to suffer lost wages and benefits, and has suffered other compensatory damages to be proven at trial.

   **WHEREFORE,** the Plaintiff demands judgment against all of the Defendants, jointly and severally, pursuant to Count II of this complaint, together with statutory interest, costs of suit, and his reasonable attorneys fees.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

# THIRD CAUSE OF ACTION
### (Civil Conspiracy)

### (Against All Defendants)

49.     The Plaintiff restates the allegations contained in Paragraphs 1-48 as if specifically set forth herein.

50.     The Defendants herein have combined and conspired to harm Howard through illegal means and for illegal purposes.

51.     The Defendants herein have combined and conspired to obstruct justice and to prevent Howard from disclosing their illegal activities.

52.     The Defendants herein have combined and conspired to defame Howard and to libel and slander Howard, in order to discredit him and to deny Howard his right to free speech.

53.     The Defendants herein have combined and conspired to harass and annoy Howard, to interfere with the terms and conditions of his employment, and attempted to wrongfully terminate Howard from his employment as a firefighter.

54.     As a direct and proximate result of the foregoing civil conspiracy by the Defendants, Howard has suffered anxiety and severe emotional distress, has suffered humiliation and embarrassment, has suffered and will continue to suffer lost wages and benefits, and has suffered other compensatory damages to be proven at trial.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

**WHEREFORE,** the Plaintiff demands judgment against all of the Defendants, jointly and severally, pursuant to Count III of this complaint, together with statutory interest, costs of suit, and his reasonable attorneys fees.

**NOW THEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for compensatory damages in the amount of One Million Dollars ($1,000,000.00), punitive damages in an amount to be determined by this Court; the costs of this action, including but not limited to reasonable attorney fees, and for such further relief as Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

/s/RICHARD B. REILING
RICHARD B. REILING BBO#629203
Two Center Plaza, Suite 510
Boston, MA 02108
(800) 719-2680 Phone & Facsimile
reilinglaw@aol.com
Attorney for Plaintiff

## JURY DEMAND

Plaintiff demands trial by jury as to all issues herein.

Respectfully submitted:

/s/RICHARD B. REILING
RICHARD B. REILING 0066118
Attorney at Law

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com